[Civil Nos. 3077, 3078, 3079, 3080.  Filed January 19, 1932.]

[7 Pac. (2d) 241.]

CHARLES A. WEIDLER and NATIONAL SURETY COMPANY, a Corporation, Appellants, v. THE ARIZONA POWER COMPANY, a Corporation, Appellee in Cause No. 3077; THE BASHFORD–BURMISTER COMPANY, a Corporation, Appellee in Cause No. 3078; SOUTHWEST METALS COMPANY, a Corporation, Appellee in Cause No. 3079; VERDE TUNNEL AND SMELTER RAILROAD COMPANY, a Corporation, Appellee in Cause No. 3080.

Mr. John A. Ellis, for Appellant Charles A. Weidler.

Messrs. Stockton & Perry, Mr. Stanley A. Jerman and Mr. Thomas P. Riordan, for Appellant National Surety Company.

Messrs. Cornick & Crable, for Appellees The Arizona Power Company and The Bashford-Burmister Company.

Messrs. O'Sullivan & Morgan, for Appellee The Southwest Metals Company.

Mr. Leo T. Stack, for Appellee Verde Tunnel and Smelter Railroad Company.

LOCKWOOD, J.—These are suits upon the official bond of Charles A. Weidler as treasurer and tax collector of Yavapai county. Since the essential facts and the rule of law to be applied are the same in all four cases, they were by mutual consent consolidated

for the purposes of the trial and on this appeal. There is no serious dispute as to the facts which we consider necessary to a determination of the cases, and we therefore state them as follows:

The first installment of 1925 state and county taxes became delinquent on the second day of November in that year. On or before that date the following named corporations, Arizona Power Company, Bashford-Burmister Company, Southwest Metals Company and Verde Tunnel and Smelter Railroad Company, hereinafter called appellees, delivered to Weidler their checks in the amount of their taxes then due, drawn by the first three appellees on the Prescott State Bank, and by the last-named appellee on the Bank of Jerome, and he or his deputies, upon receipt thereof, delivered tax receipts to appellees, and marked the taxes as paid upon the records of the county. At the time of their delivery and for at least three weeks thereafter, each of appellees had on deposit with the bank upon which the check was drawn sufficient funds to pay such check. Weidler's office was situated in the same city as was the Prescott State Bank and some thirty-five miles from the location of the Bank of Jerome. There was constant and uninterrupted mail and automobile stage communication between Prescott and Jerome daily all through this time.

On the 25th of November both of the drawee banks were closed by the state bank examiner as insolvent. From the time of the receipt of the checks up to the failure of the banks as aforesaid, Weidler never presented them for payment, and they never have been paid. Thereafter the board of supervisors of Yavapai county by appropriate resolution directed the treasurer to cancel the record of the tax payments, and the county brought suit against each appellee for the amount of its taxes. Appellees an-

swered, setting up the delivery of the checks aforesaid, and failure of Weidler to present them, and that they would have been paid if presented within a reasonable time to the drawee banks, claiming in effect that the delivery of the checks to Weidler was made to him in his official capacity as county treasurer, and that under such circumstances appellees were not liable to the county for said taxes. A demurrer to the answer was interposed by the county and sustained, and defendants declining to answer further, judgments for the amount of the taxes were entered in favor of the county, which judgments were duly paid.

About three years after the failure of the banks, appellees commenced these actions against Weidler and the surety on his official bond, claiming that his failure to present the checks for payment constituted negligence in the performance of his official duties for which he and his bondsmen were liable. Weidler defended on the ground that he had not been guilty of any wrongful act or default in the premises, that appellees had sustained no damage, and that the condition of the county's deposit account with the Prescott State Bank and the circumstances surrounding the transaction relieved him from liability. He further pleaded affirmatively that even had the checks in question been promptly presented to the drawee banks, they could and would not have been paid because those institutions were at the time of his receipt thereof insolvent.

The National Surety Company, a corporation, which was the surety upon Weidler's official bond, defended substantially on three grounds: (a) That as against it the causes of action were barred by the statute of limitations; (b) that in the receipt and handling of the checks in question Weidler acted as the agent of appellees, and not in his official capacity as county treasurer, and (c) that if he were in any

way negligent, appellees were guilty of contributory negligence in giving him checks instead of cash for the payment of the taxes. The cases were tried to a jury, but upon motion of appellees at the conclusion of all the evidence the trial court discharged the jury and rendered judgment against appellants, and from such judgment this appeal is prosecuted.

There are some eighteen assignments of error, but instead of considering these *seriatim* we think it better to discuss first some of the general rules of law applicable to the situation. As we have said, this is a suit against the treasurer of Yavapai county upon his official bond. It is of course necessary in order that appellees recover in such suit that it appear the condition of the bond has been violated. Under the statute such condition must be "that the principal will well, truly, and faithfully perform all official duties then required by law, and also such additional duties as may be imposed on him by law." Paragraph 194, Rev. Stats. Ariz. 1913 (Civ. Code). The question then is as to whether or not the facts above stated show a violation of any official duties of Weidler as treasurer of Yavapai county.

The office of county treasurer is a constitutional one, and the Constitution states that its duties, powers, and qualifications shall be as prescribed by law. Article XII, §§ 3 and 4, Constitution of Arizona. We must then look to the statute for such duties, and nothing not contained therein or reasonably to be implied from its terms can be held to be an official duty of the county treasurer. These duties are set forth in various portions of the Code, but the only ones which either directly or through implication therefrom can be said to affect the present situation are as follows:

"2561. The county treasurer shall:
"(1.) Receive all moneys belonging to the county, and all other moneys directed by law to be paid to

him, safely keep the same, and apply and pay them out, rendering account thereof as required by law.''

''4897. The county treasurer as tax collector, in each county of the state, is hereby directed and empowered, and it is hereby made his duty, to collect all state and county taxes levied in his county for state and county purposes. . . .

''4898. No demand for taxes shall be necessary, but it shall be the duty of every person subject to taxation under the provisions hereof to attend in person, or by agent or attorney, at the office of the county treasurer and pay his taxes before the same become delinquent.'' Rev. Stats. Ariz. 1913 (Civ. Code).

The particular controversy in this case arose in connection with the duty prescribed by paragraph 4897, *supra,* in the collection of the state and county taxes. Now, it cannot be questioned that unless the statute expressly authorizes a tax collector to accept something else in the payment of taxes, the only legal payment is in lawful money, and not in checks, drafts or written orders upon private bank accounts. *Vial* v. *Paradis,* 44 Idaho 157, 53 A. L. R. 191, 255 Pac. 643; *Moritz* v. *Nicholson,* 141 Miss. 531, 106 South. 762; *Barnard* v. *Mercer,* 54 Kan. 630, 39 Pac. 182; 37 Cyc. 1162. It is only because of this rule that the county was entitled to recover the amount of the taxes from appellees in the suits brought for that purpose, for if the county treasurer could legally have received payment of the taxes in checks, then the only remedy of the county would have been against the treasurer and his bondsmen for negligence in not collecting the checks, and not against appellees for failure to pay their taxes. We conclude, therefore, that it was not within the official powers or duties of the county treasurer to accept the checks in question in payment of the taxes. Indeed, this is not seriously questioned by appellees, but it is their contention that he *received* the checks

under color or by virtue of his office, and such being the case that his negligence in failing to cash them was a violation of a duty imposed on him by law. They have cited no case supporting their position upon anything like a similar state of facts, but rely rather upon authorities which discuss the general principles determining what are and what are not official acts, and particularly upon the case of *Miles* v. *Wright,* 22 Ariz. 73, 12 A. L. R. 970, 194 Pac. 88, and other cases cited therein.

The case just cited was one for damages against the sheriff for a false arrest made by his deputy. The sheriff demurred on the ground that the complaint did not show that the arrest by the deputy was an ''official act.'' In discussing what is an ''official act'' in suits on the bond of a public officer, we stated the rule to be as follows: ''It means any act done by the officer in his official capacity under color and by virtue of his office.'' And, further, we quoted approvingly the opinion of the court in *Grenius* v. *American Surety Co.,* 92 Wash. 401, L. R. A. 1917F 1134, 159 Pac. 384, as follows:

''Much mental energy has been expended in drawing distinctions between acts of public officers done *colore officii* and acts done *virtute officii,* and we shall not undertake to assemble definitions. Our understanding is that, when an officer acts in the performance of his duty and, so acting, acts to the hurt or annoyance of a third party or an innocent party, he is nevertheless acting in virtue of his office. That is to say, if his office gives him authority to act, he is acting in virtue of his office, although, in the performance of a specific duty, he improperly exercises his authority. For instance, if an officer have a warrant for A. and, without reasonable ground for believing him to be the guilty person, takes B., he is still acting in virtue of his office. If it were not so, he would never be liable upon his bond. Nor would his surety ever be liable except for his lawful acts, which is *reductio ad absurdum,* for it follows that

there could be no liability if there had been no breach of duty.''

We reaffirm the rule laid down as above, but think appellees have failed to appreciate the vital part of the test, which is as follows:

''When an officer acts *in the performance of his duty*, and so acting, acts to the hurt or annoyance of a third party or an innocent party, he is nevertheless acting in virtue of his office. That is to say, *if his office gives him authority to act*, he is acting in virtue of his office, although, in the performance of a specific duty he improperly exercises his authority.'' (Italics ours.)

In the Miles case we held that the law gave a peace officer the *right to arrest* for a felony without warrant, but not for a misdemeanor committed out of his presence without a warrant, and therefore, if the arrest had been for a misdemeanor, it would not have been an official act, but since it appeared that it was for a felony, the sheriff would be liable, if it was improperly made. Applying this principle to the case at bar, if the law had authorized the treasurer to take a check in payment of taxes, and he had done so, but had thereafter handled it in a negligent or careless manner, he would have been liable on his official bond for failure to perform his official duty properly. But since the law gave him no authority to accept a check in payment of taxes under any circumstances, his act in taking those involved herein was not an official one, but merely one in his private capacity, and whatever we may say as to his individual responsibility for negligence, he is not liable in a suit on his official bond for acts done in his private capacity.

But, it may be urged, the checks were sent to him because of his official capacity, and he accepted them because of that capacity, and for this reason the act was under color or by virtue of his office. All

persons are bound at their peril to know the law and the limitations, powers and duties of public officers. *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257. Appellees therefore were bound to know that the treasurer was without power to accept checks in his official capacity. They fail to distinguish between delivering the checks to him *as* treasurer, or *because he was* treasurer. The law requires all taxpayers to attend at the office of the county treasurer to pay their taxes. This is doubtless inconvenient at many times, particularly for taxpayers living at some distance from the county seat, and for their own convenience they frequently get someone else to make the payment for them. This is sometimes done by delivering cash to a friend, with the request that he make the payment in person, sometimes by giving him a check to cash at some convenient bank and with the proceeds to pay the taxes, or far more frequently, *because it is more convenient to the taxpayer,* by directly or impliedly requesting the county treasurer to cash the taxpayer's check and with the proceeds of such check to pay his taxes. The various county treasurers of Arizona have for many years as a matter of courtesy to the taxpayers followed the practice of receiving a check from any taxpayer, either directly or through the mail, and cashing the same through the regular course of business, so that the actual money finally comes into their possession. But it has generally been understood by both treasurer and taxpayers, and was correctly held to be the law by the trial court in the suit by the county against appellees, above referred to, that such acceptance was not a payment of the tax unless the cash was actually received by the treasurer.

A somewhat similar question has been before the courts of several states, and it is the general rule that when a public officer who is authorized to receive payment only in money accepts a check or similar

instrument, he does so not as agent for the county, in his official capacity, but in his private capacity, as the agent of the party who sends him the check, and continues to act as such private agent until the cash actually passes into his hands. Then, and not till then, does he act in his official capacity as agent of the county. *Vial* v. *Paradis, supra; Koones* v. *District of Columbia,* 4 Mackey (15 D. C.) 339, 54 Am. Rep. 278; *Matthews* v. *Montgomery,* 25 Miss. 150; *Austin* v. *Fox,* (Tex. Com. App.) 1 S. W. (2d) 601; *Morgan* v. *Gilbert,* 207 Iowa 725, 223 N. W. 483. Neither can the fact that it has been the custom of the great bulk of taxes for many years to be paid in this manner alter the rule. If an act is not an official duty, private custom, no matter how long continued, cannot make it such. *Vial* v. *Paradis, supra; Williams* v. *Hall,* 30 Ariz. 581, 249 Pac. 755.

Since as we have shown, the act of Weidler in accepting the checks in question and retaining them was that of the private agent of a private party, and not that of a public officer, acting by virtue of or under color of his office, he would not be liable in a suit on his official bond, whatever might be his liability in a suit against him in his private capacity. And if he is not liable, much less would his surety be.

It may be contended that this decision will vitally affect and greatly hamper the methods heretofore used by taxpayers in this state for paying their taxes. We think this fear is greatly exaggerated. Most taxpayers have always known that until their checks were actually translated into money in the hands of the treasurer the tax was not paid. They must necessarily have known, if this be true, that when the check was mailed to the treasurer they assumed the risk of the money which the check represented not passing into the hands of the county. The only possible difference this decision can make is that the taxpayer will realize that if anything goes wrong

and his check is not cashed, his remedy is against the treasurer individually, rather than against his official surety. But be this as it may, unless the legislature desires to change the law so as to make it the official duty of the treasurer to accept checks in payment of taxes, either absolutely or conditionally, and thus impose upon the sureties of the county treasurer the responsibility for the collection of such checks, the taxpayer, if he desires for his own convenience to pay his taxes in this manner, must take the risk of the failure of the agent whom he has selected to make the payment to collect the check, no matter who that agent may be, without looking to the official bond of the treasurer for reimbursement.

In view of what we have said, we need not consider the assignments of error separately.

The judgment of the superior court of Yavapai county is reversed and the cause remanded, with instructions to enter judgment in favor of appellants in each case.

McALISTER, C. J., and ROSS, J., concur.