[Civil No. 4615. Filed April 5, 1945.]

[157 Pac. (2d) 698.]

JAMES H. KERBY and HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, Appellants, v. STATE OF ARIZONA, *ex rel.* ANA FROHMILLER, State Auditor, Appellee.

Messrs. Struckmeyer & Struckmeyer, for Appellants.

Mr. Phil J. Munch, for Appellee.

MORGAN, J.—This is an appeal by defendants from a judgment in favor of plaintiff, State of Arizona *ex rel.* Ana Frohmiller, State Auditor.

For a proper understanding of the issues it is essential to make some reference to the laws out of the administration of which the litigation arose. The legislature, through chapter 78, Session Laws 1925, placed in the secretary of state the administration of, among other things, the issuance of certificates of title and drivers' permits for motor vehicles. All fees received were to go directly to the secretary of state. All expenses incurred were to be paid by him and the balances remitted to the state treasurer. Section 19 of

the act provided: "The Secretary of State is hereby given power to incur any additional expense in the enforcement of this Act."

Section 20 provided: "The Secretary of State shall pay out of said fund all expenses which may be incurred in the enforcement and carrying out of the provisions of this Act; to pay for the printing of this Act, and the preparation and printing of the prescribed forms, together with the cost of postage, mailing and other necessary expenses, equipment, clerical and other employees."

This act was approved March 19, 1925, and became effective June 14th of that year. At the fourth special session of the eighth legislature the Highway Code for Arizona was enacted and appears as chapter 2 of the Special Session Laws, 1927. The act was passed with an emergency and became effective on the date of its approval, August 11, 1927. By the terms of this act, the highway commission was required to appoint a highway engineer and within ten days after his appointment and qualification the engineer was required to make a demand on the secretary of state for the records and other data relating to the registration of motor vehicles, issuance of certificates of title, etc. It was provided that the engineer must be appointed within thirty days.

The admitted facts are: The defendant, Kerby, was the duly elected, qualified and acting secretary of state for the years 1925, 1926 and 1927. Demand was made by the engineer upon him on August 27, 1927, for the books, property and records, in accordance with the terms of the code. A question having arisen as to the validity of the repeal of the former act, the interested parties agreed that Kerby should continue administering the act until the question was settled. During the period from August 17th to the 28th day of October,

1927, he continued in the administration of the Motor Vehicle Registration Act.

The defendant indemnity company executed a $10,000 bond for the faithful performance of Kerby's official duties and the payment of all moneys which might come to his hands as secretary of state, for the term beginning the 5th day of January, 1925, and ending on the first Monday of January, 1927. A like bond was executed by the defendant indemnity company for the period beginning the 3d day of January, 1927, and ending on the 7th day of January, 1929. These bonds were duly approved and filed.

About the 27th day of November, 1925, defendant Kerby expended and paid out of the funds in his possession collected by him under the terms of this act, the sum of $6,053.59 for 200,000 copper license tags. These tags bore on one side the words "If found return to James H. Kerby, Secretary of State," and on the reverse side the words "Operator's License." They were generally distributed throughout the state. Between the 11th day of August and the 17th day of October, 1927, he expended and paid out of the fees aforesaid, $1,375 for an audit of the books pertaining to his administration of the act, $3,035.85 for printing copies thereof, and $765 for envelopes for mailing same. On September 12, 1927, he paid out of said fund the sum of $178.68 for traveling expenses to attend the National Secretary of States' conference at Sacramento, California, on September 8th and 9th. On October 17, 1927, he paid out of such funds to himself for traveling expenses within the state of Arizona, during September and October, the sum of $176.10. The audit was deemed necessary by Kerby for the protection of public officers concerned with the enforcement of the law. It was approved by the then governor of Arizona. A copy of the audit was delivered to the state highway department, with all records, on the 28th day of Octo-

ber, and on or about the same day copies were delivered to all other officials interested in the administration of the Motor Vehicle Registration Act.

The plaintiff, Frohmiller, took office as state auditor on the first Monday in January, 1927, and has since continued in that office. All the records of the defendant Kerby relating to receipts and disbursements by him in the administration of the Motor Vehicle Registration Act have at all times since about the 28th day of October, 1927, been available to the state auditor. The validity and correctness of the receipts and expenditures were never judicially questioned until the institution of this action in the year 1940. At the time of the transfer of the business of the Motor Vehicle Registration Act to the state highway department, and for many years thereafter, Kerby was financially able to meet any demands made upon him in connection with his disbursements under said act. During such period he could have paid any amount that the surety on his bond, the indemnity company, might have been required to pay, if a judgment had been rendered against him, or demand made for payment of any illegal expenditure. At the time of the institution of this action, and at the present time, he is unable to pay the amounts for which it is claimed he is liable.

Under the provisions of chapter 78, Laws 1925, defendant Kerby was entitled to additional salary at the rate of $2,000 per year to cover the administration of the Motor Vehicle Registration Act. In the year 1930 Kerby filed an action in the superior court against Ana Frohmiller as auditor of the state of Arizona, for the issuance of a writ of mandamus to require her to show cause why she should not audit, allow and issue warrant for $2,416.65 which he claimed as unpaid salary under the act. The writ was issued. Frohmiller, as auditor, appeared in the action, filing pleadings questioning the sufficiency of the petition. This litigation finally resulted in a judgment in favor of Kerby for the

amount of his claim. The claim was audited and found correct as adjudged by the court, but has never been paid.

The expenditures made by Kerby were bona fide in that each payment was made by him for goods received, or services rendered. Judgment, including interest at the legal rate to the date of judgment, was entered against defendant Kerby in the total sum of $22,799.75, and against defendant indemnity company in the sum of $20,000.

The first question for our consideration is as to the validity, or the legal right, of defendant Kerby to make these expenditures. This is to be determined from the provisions of the act. Did chapter 78, Session Laws 1925, authorize the payments? If not, should plaintiff be barred from recovery by any of the defenses interposed? These will be discussed after disposition of the first inquiry.

█ █ The secretary of state was given rather broad general powers in the enforcement and carrying out of the provisions of this act. The defendants argue that under Section 19, *supra*, the secretary had a wide discretion, and that he cannot be charged with a mere error of judgment. The claim is that the act conferred upon the secretary "to do all that he should deem reasonable and proper in the administration of the act, and that unless an abuse of discretion be shown there could be no ensuing liability." We do not so construe the law. The provision in Section 19 which gives the secretary "power to incur any additional expense in the enforcement of this Act" is limited by the provisions of Section 20. This section definitely states what the secretary shall pay for, and concludes with "and other necessary expenses, equipment, clerical and other employees." The payments involved here do not come within the expense items specifically mentioned in Section 20, and must be justified, if at all, under the latter portion of the section which we have

quoted. That is to say, "other necessary expenses," "clerical and other employees." This is the measure of the secretary's right to incur and make expenditures. It is a clear pronouncement and the secretary should not have had any difficulty in determining what expenditures were authorized. The record discloses no evidence of bad faith on the part of the secretary, and that the payments made were bona fide, in that they were made for services rendered or expenses incurred or materials received by him in connection with his administration of the act. After the cause of action arose thirteen years elapsed before complaint was made. For these reasons, we will be impelled to consider all matters in the light most favorable to the defendants. If, through liberality of construction or views, any legal justification can be found for any of these payments, we deem it our duty to so hold.

The item of $6,053.59 for copper license tags is clearly not an expense authorized by law. These tags were of no value in the enforcement of the law, nor were they in any way necessary or required in the carrying out of the provisions of the act. Section 13 provided specifically for the issuance of permits to drive motor vehicles. These permits were to be issued in triplicate by the various county assessors, on blanks bearing a facsimile of the signature of the secretary of state, countersigned by the assessor. The permits so issued to bear the name of the permittee, age, race, residence, trade-name and type of vehicle. Original was delivered to the applicant, one copy to be kept by the secretary of state, the third to be retained by the assessor. The fee charged for such permit was fixed at 50 cents. This was the only operator's license provided for, or required by, the act.

We think the amount paid for the audit of the books, $1,375, pending delivery of the accounts and business of the Motor Vehicle Registration Act to the

state highway engineer, is authorized by the law. The employment of the auditor was suggested by the then governor. It was useful to the highway department. Regardless of this, the audit would seem to have some relation to carrying out the provisions of the law. The secretary was given power to pay for clerical assistance and other employees. The audit may be classed as a necessary expense.

The items of $3,035.85 for printing, and $765 for envelopes for mailing this audit cannot be justified on any theory. The printing and distribution of this audit in no manner aided in the enforcement or carrying out the provisions of the law.

The expenditure of $178.68 for traveling expenses to attend the National Secretary of States' conference in California could only be upheld under the "other necessary expenses" provision of the statute. Obviously, it cannot be said that a trip to such a conference would be aiding in the enforcement and carrying out of the provisions of the act. The law had to be enforced and administered in Arizona, and applied only to owners of Arizona cars, or to owners of motor vehicles from other states who remained longer than a period of thirty days within the state.

The travel expense within Arizona of $176.10 does not appear unjustifiable. The secretary transacted much of this business through the various county assessors. He was required to furnish them forms. They, in turn, had to deliver copies of permits to him and pay monthly for sums collected. We may assume that from time to time, in furtherance of the enforcement and carrying out of the provisions of the law, he found it convenient to visit the various county seats. Expenses for such necessary travel are authorized by the act. This is a proper charge.

This court has held that a charge for expenses by a public officer for services without the state,

where the law does not authorize the performance of such service beyond the state's boundaries, to be illegal and unlawful. *Yavapai County* v. *O'Neill*, 3 Ariz. 363, 29 Pac. 430; *Maricopa County* v. *Norris*, 49 Ariz. 323, 66 Pac. (2d) 258. We adhere to that rule which is fully applicable to the California travel expense item here. This charge, as well as the other items which, as has been shown, were not authorized by the terms of the law are invalid, unlawful and recoverable. It has been repeatedly held by this court that an expenditure by a public officer is invalid unless it is authorized by law and is for a public purpose. *County of Santa Cruz* v. *Barnes*, 9 Ariz. 42, 76 Pac. 621; *Austin* v. *Barrett*, 41 Ariz. 138, 16 Pac. (2d) 12; *Webster* v. *Parks*, 17 Ariz. 383, 153 Pac. 455; *Thompson* v. *Frohmiller*, 56 Ariz. 313, 107 Pac. (2d) 375; *City of Phoenix* v. *Michael*, 61 Ariz. 238, 148 Pac. (2d) 353; *Webb* v. *Frohmiller*, 52 Ariz. 128, 79 Pac. (2d) 510; *State Board of Health* v. *Frohmiller*, 42 Ariz. 231, 23 Pac. (2d) 941. It is also established that where, as here, an expenditure is made without authority of law, the reasonableness, practicability, or expediency of such an expenditure is no justification.

This brings us to the defenses which have been presented. The first of these is that the doctrine of *res adjudicata* applies as a bar to these claims by reason of the failure of the state auditor to plead them as a set-off or counterclaim in the 1930 mandamus action brought by Kerby. We see no merit in this defense. As the law then stood, there was no obligation on the auditor to assert by way of set-off, counterclaim or otherwise, the claims here involved. The sole issue of the mandamus case was the right of the secretary to the salary allowed him by law.

The provisions of section 3784, R. C. 1928, applying to the assertion of set-offs and counterclaims, were permissive and not mandatory, as now required by the

rules of civil procedure. Section 21–437, Arizona Code Annotated 1939. Even now, the pleading of such a set-off or counterclaim is mandatory only where it arises out of a transaction or occurrence the subject matter of the opposing party's claim. All other counterclaims are permissive. Section 21–438, Arizona Code Annotated 1939. The failure of the state auditor to present these claims in the mandamus suit does not bar the present action. The issue in that case was the right of the secretary to have a salary claim audited, allowed, and warrant issued for the period October 17, 1927, to the end of his term in 1928. He had been paid his additional salary while actually administering the act. The fact that he had, while administering the act, made illegal expenditures would have been no defense to his claim for salary for the period mentioned. The claims did not arise out of and were not directly connected with the cause of action. Inasmuch as we have no statute, or had no statute at the time of the institution of the mandamus action, requiring set-offs or counterclaims to be asserted, it follows that the general rule applies, and that claims which might have been pleaded as a set-off or counterclaim are not barred by the previous action. We think perhaps the best statement on the subject is found in 30 Am. Jur. 934, 935, Sec. 190, entitled "Judgments":

"In the absence of any statutory declaration on the matter the general rule is that a judgment in a prior action in which a claim might have been but was not asserted as a set-off, counterclaim, or cross action, does not conclude the defendant and is no bar to a subsequent independent action based on the claim, or to the right to rely thereon as a defense to or as a counterclaim in a subsequent action. . . . "

The question would seem to be foreclosed by the decision of this court in *Fischer* v. *Hammons,* 32 Ariz. 423, 259 Pac. 676, 679, wherein it was said:

"The general rule is that a set-off may be pleaded, or not, at the option of the defendant; and that, if not pleaded, the right to sue upon it as an independent cause of action or to rely upon it in another action by the same defendant is not affected or impaired by a judgment against the defendant. (Citing cases.)"

The various authorities called to our attention by the appellants seem to have no application whatsoever to the question for decision. This court has on many occasions stated that a judgment is conclusive upon questions actually contested, and also upon matters which might have been·litigated and decided in the prior suit. These expressions, however, were all uttered in cases where, under the allegations of the complaint, the matters of defense which later were made the subject of an action could have been litigated, or where the defense was inherent in the action itself. This court has never held that if a party failed to plead a set-off or counterclaim under the provisions of sections 3784 or 3785, R. C. 1928, not involved in and inherently defensive of the prior cause, that a later action asserting such claim would be barred. Under the law as it stood in .1930, the state auditor was not compelled to make any claim of set-off or counterclaim. The plaintiff's pleading in that case covered a period following his actual administration of the act in question. The cause of action for the invalid expenditures was wholly separate and distinct and was in no way defensive to the secretary's cause of action in the mandamus action.

This brings us to the second defense. It is claimed that the action should be barred on the ground of estoppel *in pais*. Estoppel *in pais* is defined as follows:

"An estoppel by the conduct or admissions of the party; an estoppel not arising from deed or matter of record. . . . A right arising from acts, admissions, or conduct which have induced a change of position. . . . An 'estoppel *in pais*' arises whenever one, by

his conduct, affirmative or negative, intentionally or through culpable negligence induces another to believe and have confidence in certain material facts, and the latter, having the right to do so relies and acts thereon, and is, as a reasonable and inevitable consequence, misled to his injury. . . . Estoppel by matters *in pais* is an indisputable admission arising from circumstances that party claiming benefit of it has in good faith been induced to change his position to his substantial prejudice by voluntary intelligent action by party against whom it is alleged.'' Black's Law Dict., 3d Ed., 689.

Based upon the definitions of this doctrine, we do not find much comfort for the defendants' position. They, however, contend that the state accepted the benefit of the payments which are now claimed as unauthorized, and that by long acquiescence in the acts of the secretary, his position has in some way been injuriously affected. From what we have already said, it is obvious that the state secured no benefits from the payments which we have condemned. Nor do we find anything in the record to support the claim that defendant Kerby has been injured by the delay. They also urge that if action had been seasonably brought, the defendant indemnity company could have recovered from its co-defendant Kerby any judgment that might have been entered. It may be that this defense could be successfully maintained if this were a suit between private individuals. All men will agree that this action should have been brought more seasonably. However that may be, the rule is established that the statutes of limitation, laches or estoppel do not run or operate against the state. *State* v. *Moore,* 49 Ariz. 51, 62, 64 Pac. (2d) 809, 814. In that case the claim was made that the state's cause of action was barred by laches and limitation. The court said:

'' . . . Point (c) would be well taken were this a contest on behalf of a private individual, but, as we have said, it is not, and, when the public interest is

concerned, neither laches nor the staute of limitations applies against the state, in the absence of a statute expressly allowing such defenses. Section 2056, R. C. 1928; *State ex rel. Veale* v. *Paul,* 113 Kan. 412, 214 Pac. 425. . . . "

*Ward* v. *Frohmiller,* 55 Ariz. 202, 212, 100 Pac. (2d) 167, 171, quoting:

" . . . If the claims have already been paid, the responsible head of the department approving them and his bondsmen are forever liable to the state for the illegal expenditure, in a proper action brought to recover the money . . . , for the statutes of limitation do not run against the state."

The leading case on the subject appears to be *People* v. *Whittemore,* 253 Ill. 378, 97 N. E. 683, 685. In an action against sureties on the official bond of the state treasurer, which was not instituted until many years after the cause of action arose, plea of estoppel was filed as in the present case. The court stated:

" . . . the general rule is that laches, acquiescence, or unreasonable delay in the performance of duty on the part of the officers of the state is not imputable to the state when acting in its character of a sovereign."

We know of no authority to the contrary and no decisions have been cited by the defendants in support of their defense of estoppel. We, therefore, hold under the established rule that this defense is ineffectual.

The defendant indemnity company is in no better position than its principal to take advantage of the estoppel plea. It may well be that had this action been brought at an earlier date, it could have recovered against its principal. The law is settled, however, that the forbearance of a creditor does not operate as an estoppel against the surety. The neglect of the creditor to sue the principal does not discharge the surety even though the principal may at the time the debt becomes due have means of satisfying the

claim, and subsequently becomes insolvent. We quote from 50 Am. Jur. 960, 961, sec. 79, title "Suretyship":

" . . . It is likewise true that a creditor may refrain from prosecuting his claim against the principal, and remain inactive, without impairing his right to resort to the surety, particularly when his forbearance amounts to mere inaction or passivity. A creditor is under no obligation insofar as the surety is concerned to be actively diligent in pursuit of the principal, unless the surety requires him by appropriate notice to sue on the obligation. . . . Thus the mere neglect of the creditor to sue the principal at the time the debt falls due does not discharge the surety, even though the principal has ample means of satisfying the claim at the time, and subsequently becomes insolvent."

It would seem from the admitted facts in this case, particularly in view of the wide distribution given to the audit, that the indemnity company had as much notice of the unauthorized payments as the state had. It could only avail itself of this defense of estoppel by showing that it had given notice to the state to take action against its principal for the recovery of the invalid payments.

The last proposition of the defendants though ingenious is not meritorious. It is said that because these expenditures were made illegally and without authority of law, no recovery against the indemnity company can be had. The bonds were given for the faithful performance of the secretary's official duties and the payment of all moneys which might come to his hands. Obviously, if he performed his duties faithfully and made no illegal or unauthorized expenditures, there would be no liability on this character of bond. A surety is required for the purpose of securing the state against such unauthorized acts or expenditures. Otherwise, there would be no necessity of having a bond at all. The defendant indemnity company relies upon our decision in *Sims Printing Co.* v. *Kerby,* 56

Ariz. 130, 106 Pac. (2d) 197. This case has no application whatsoever. In that case a private party sued the official and sureties on the bond. The secretary of state, Mr. Kerby, defendant here, employed the Sims Printing Company to have certain measures printed. He had no authority to include the measures in the publicity pamphlet of 1938. His act was in no sense an official one. The state was not liable for the expenditure, and nothing was paid by the state on the claim of the printing company.

The opinion of this court, in the case of *National Surety Co.* v. *Pinal County,* 30 Ariz. 383, 247 Pac. 135, is decisive of the question which has been raised by the defendants. The majority opinion quoted with approval from the case of *State* v. *United States Fidelity & Guar. Co.,* 81 Kan. 660, 106 Pac. 1040, 26 L. R. A. (N. S.) 865, the following pertaining to the liability of the surety on the bond of a state treasurer [30 Ariz. 383, 247 Pac. 137]:

" ' . . . The bond was given to protect the state against official delinquency. The extent of the obligation of the surety is written in the bond. There is no provision in it by which the state binds itself that the treasurer or the bank shall faithfully follow the law. The main reason for requiring a bond is to guard against possible defaults and the neglect or misconduct of officers. . . . Its liability is not contingent upon the neglect of the treasurer or the legality of his action.

*Ward* v. *Frohmiller, supra,* from which we have heretofore quoted, holds that illegal expenditures are recoverable against the surety. See also *Button* v. *Nevin,* 44 Ariz. 247, 36 Pac. (2d) 568.

 The rule is established that sureties on official bonds are liable if the act is done either by virtue of office or under color of office. There can be no question in this case that the expenditures involved were made at least under color of office. In *Miles* v. *Wright,* 22 Ariz. 73, 194 Pac. 88, 92, 12 A. L. A. 970,

this court applied the general rule which we have just mentioned, and quoted and adopted the definition of an official act from *Greenberg* v. *People*, 225 Ill. 174, 80 N. E. 100, 8 L. R. A. (N. S.) 1223, 116 Am. St. Rep. 127:

" 'By an official act is not meant a lawful act of the officer in the service of process; if so, the sureties would never be responsible. It means any act done by the officer in his official capacity, under color and by virtue of his office.' "

In accordance with the views we have expressed, the the judgment of the lower court is modified in the following particulars: The total of the items of $1,375 and $176.10, with interest thereon at the rate of 6% per annum from October 17, 1927, to the date of the judgment, is deducted therefrom, and the judgment as so modified is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.