[Civil No. 2468. Filed June 17, 1926.]

[247 Pac. 135.]

## NATIONAL SURETY COMPANY, a Corporation, Appellant, v. COUNTY OF PINAL, STATE OF ARIZONA, Appellee.

1. APPEAL AND ERROR—WHERE TRIAL COURT HAS DIRECTED VERDICT, SUPREME COURT MAY REVIEW EVIDENCE THOUGH NO MOTION FOR NEW TRIAL WAS MADE (CIV. CODE 1913, PARS. 590, 1231).— Where trial court has directed a verdict, Supreme Court may review evidence, though no motion for new trial is made within ten days allowed by Civil Code of 1913, paragraph 590, in view of paragraph 1231, requiring Supreme Court to review all orders and rulings of trial court which are assigned as error whether motion for new trial is made or not.

2. DEPOSITARIES—MONEY IN HANDS OF BANK, WHICH WAS PROCEEDS OF WARRANTS AGAINST ROAD DISTRICT FUND WHICH COUNTY TREASURER HAD PAID FROM GENERAL FUND AND DEPOSITED IN BANK AS CASH, HELD "PUBLIC MONEY" WITHIN MEANING OF BANK'S DEPOSITARY BOND (CIV. CODE 1913, PAR. 2568).—Where bank accepted as cash warrants against road district funds which county treasurer had paid from general funds of county instead of marking them "Not paid for want of funds," as required by Civil Code of 1913, paragraph 2568, and, before such warrants were taken up by county treasurer with incoming road district funds, disposed of them to third persons, receiving cash, and thereafter failed, *held* the moneys so received were "public moneys" within the meaning of bank's depositary bond, and bank's surety was liable for amount thereof.

3. DEPOSITARIES. — Depositary is public agent of county, and bond given county is an "official bond."

4. DEPOSITARIES—SURETY ON BANK'S DEPOSITARY BOND GIVEN COUNTY HELD LIABLE FOR INTEREST AT RATE OF SIX PER CENT RATHER THAN RATES FIXED BY STATUTE CHARGEABLE ON ACTIVE AND IN-ACTIVE ACCOUNTS (CIV. CODE 1913, PARS. 4650, 4651).—Surety on bank's depositary bond, given county after failure of bank and demand made upon it, *held* liable for six per cent interest on deposits of public money rather than interest at the rates of two and four per cent chargeable on active and inactive accounts under Civil Code of 1913, paragraphs 4650, 4651.

See (1) 3 C. J., p. 980, n. 65.   (2) 18 C. J., p. 580, n. 35.   (3) 18 C. J., p. 580, n. 35, p. 581, n. 45, p. 585, n. 50.   (4) 18 C. J., p. 588, n. 15 New.

APPEAL from a judgment of the Superior Court of the County of Pinal. E. L. Green, Judge. Affirmed.

Messrs. Stockton & Perry and Mr. Earl F. Drake, for Appellant.

Mr. Ernest W. McFarland, County Attorney, for Appellee.

ROSS, J.—This is an action brought by the county of Pinal against the Pinal Bank & Trust Company, a designated county depositary, and against the National Surety Company, the surety on depositary's bonds, and against A. T. Hammons, superintendent of banks. The bank defaulted, and Hammons answered that he was in charge of its assets as liquidating agent, under the provisions of the Banking Code (Laws 1922, c. 31).

The case against the surety company was tried before a jury upon what, in effect, was a general denial, and at its close, upon the motion of plaintiff, the court instructed the jury to return a verdict in plaintiff's favor for $34,104.06, being the amount claimed in complaint, with interest.

There are two surety bonds, one dated November 21, 1918, for $10,000, and one December 10, 1919, for $30,000. The obligations of the bonds were identical and in the following words:

"Now, therefore, if the principal, the said Pinal Bank & Trust Company of Florence, Arizona, shall well, truly, and faithfully perform and discharge all duties and responsibilities now required, or that may hereafter be required of it under any law of the state of Arizona, and shall promptly pay out to the parties entitled thereto all public moneys of the county of Pinal, state of Arizona, in its hands, or that may come into its hands, upon lawful demand therefor, and

shall, whenever required thereto by law or lawful demand, pay over to the treasurer of the county of Pinal, state of Arizona, for the use and benefit of the county of Pinal, state of Arizona, all public moneys, with interest at the rate prescribed by law for active and inactive depositories, computed on daily balances, then this obligation shall be void and of no effect, otherwise to be and remain in full force and effect.''

The bank having closed its doors on May 11, 1923, the superintendent of banks took possession thereof. Thereafter the county treasurer of plaintiff presented claims to the superintendent of banks for $57,675.25, which claims were approved by the superintendent, upon which as liquidating agent he paid as dividends before suit was brought $4,764.63, and after suit $3,970.52.

The county treasurer also sold $17,970 worth of school district bonds that the bank had deposited with her as additional security to deposits, and credited the amount with that sum.

The surety company on this appeal admits the judgment properly went against it for the major portion of plaintiff's demand, but contends that items charged against the bank as public moneys to the amount of $10,846.88 were not public moneys and did not fall within the terms of its obligation as surety, and that the judgment to that extent is erroneous.

Perhaps before we enter upon a discussion of this contention we ought to notice a preliminary question raised by plaintiff as to the court's right to review the evidence on this appeal.

The motion for a new trial was not filed within ten days after the rendition of judgment as provided by statute. Paragraph 590, Civil Code 1913. This, it is asserted, was necessary to confer jurisdiction on this court to consider the sufficiency of the evidence to substantiate a verdict or judgment in an action

30 Ariz.—25

tried before a jury—made so by paragraph 1231, Civil Code. It may be seriously doubted if it was the intention to apply such rule when, as in this case, the verdict is directed by the court. The reason for the rule would hardly apply, since the verdict, while nominally that of the jury, is in fact the conclusion of the court. Paragraph 1231, *supra,* also provides that we "shall review all orders and rulings made by the court below, which are assigned as error, whether a motion for a new trial is made or not." This is certainly broad enough to cover the court's order directing the verdict. *Law* v. *Smith,* 34 Utah 394, 98 Pac. 300. But aside from this question we do not think there should be any dispute as to the evidence. The whole controversy is over its legal effect. It is only necessary to consider whether the admitted and proved facts in law entitle the plaintiff to judgment for its whole claim.

The items the surety company refuses to acknowledge as covered by its bond may be best explained by stating the record evidence of them. During the months of January, February and March, 1923, there were drawn by the order of the board of supervisors of Pinal county against the treasurer of such county, to be paid out of the road district funds thereof, warrants amounting to several thousand dollars. There were no funds, or not enough funds, in the treasury to meet all of these warrants. Accordingly, when the payee or indorsee of one of these warrants would present it to the treasurer for payment, instead of indorsing thereon, "Not paid for want of funds," as the law requires (paragraph 2568, Civil Code), the treasurer would take moneys from the general funds of the county, pay the holder of warrant, and carry warrant until the end of the month as so much cash. At the end of each month she would take all the warrants, so taken in during the current month, to the

Pinal Bank & Trust Company, and the bank would give her credit for such warrants as so much cash.

During the times above stated warrants were handled in the above manner to the amount of $13,957.60. When money was collected or paid into the county treasury to the credit of the road district fund the treasurer would use it to replace the general fund by taking up such road warrants. On April 2, 1923, she paid to the bank, by check on said road district fund, $2,007.40, and on April 3d $1,103.32, and to that extent reduced such road district warrants, leaving with the bank $10,846.88 of such warrants. This constitutes the item in dispute. It is not questioned that the bank's assets were enlarged to the full extent of such warrants. It appears that some time prior to May 11, 1923, the date the bank closed its doors, it sold and transferred to other banks or financial institutions all of the road district warrants that had been left with it by the county treasurer and for which it had been given credit, and that thereafter these warrants were paid by the county out of the road district funds.

If the bank had not disposed of these warrants to third parties, no deficit in the general fund of the county would have occurred. But for some reason, probably financial distress, it converted such warrants into money, and the question is, Was such money public money of the county? By such act the bank's assets were enriched to that extent, and the county, if it may not recover on surety bond, impoverished to that extent. It is contended by defendant that, notwithstanding the county treasurer did not intend, when she used the general funds to take up road warrants, to discharge the county debt, it had that effect; in other words, that, although it was her purpose to retain such warrants as evidence of a subsisting county debt, to be taken care of upon the in-

coming of funds appropriated for that purpose, when she paid the payee or indorsee of any of said warrants their face, it operated as a payment of the debt, and that when she thereafter deposited them with the bank and obtained credit for them they had already been paid.

If this were a contest between the county and the holder of such road district warrants, the question as to whether the act of the treasurer, in taking up warrants as she did, amounted to payment of the county's debt, might possibly be urged by the county as a defense, although there is good authority to the contrary. *Bardsley* v. *Sternberg*, 18 Wash. 612, 52 Pac. 251, 524; *Fidelity & Deposit Co.* v. *City of Cleburne* (C. C. A.), 296 Fed. 643. But, granting such a defense might be availed of by the county upon the theory of payment, it would not be available to the bank, it having treated the warrants as valid, subsisting debts of the county and put them into circulation as such at their full face value. What the situation might have been if the bank had not converted warrants into money we need not consider. It realized *money* on the warrants, and this money was of a public character as contemplated by the condition of the surety bond. We think it may be truthfully said that the primary purpose of the depositary law was the safekeeping of the public moneys so that they might be available to the body politic for the uses and purposes intended, and to that end a surety bond was required to be given by the depositary, conditioned, in effect, that the depositary will account for all public moneys coming into its possession. The depositary is the public agent of the county, being designated and appointed as such, and the bond given the county is an official bond. *State* v. *United States Fidelity & Guaranty Co.*, 81 Kan. 660, 26 L. R. A. (N. S.) 865, 106 Pac. 1040. In this case it appears

the state treasurer could lawfully employ the bank as a collecting agency, but it was unlawful for him to allow the moneys so collected to remain with the bank for long periods and charge interest thereon. The treasurer did the latter thing, and his unlawful conduct was offered as a defense by the surety on the depositary's bond in a suit for money left in the bank, the bank having failed. The court said:

"The depository bank was an official agent of the state, an agent which has been designated as a *quasi* public official. *Snattinger* v. *Topeka,* 80 Kan. 341, 102 Pac. 509. The bond was given to protect the state against official delinquency. The extent of the obligation of the surety is written in the bond. There is no provision in it by which the state binds itself that the treasurer or the bank shall faithfully follow the law. The main reason for requiring a bond is to guard against possible defaults and the neglect or misconduct of officers. . . . Its liability is not contingent upon the neglect of the treasurer or the legality of his action."

So in the present case the irregular manner in which the bank became possessed of the $10,846.88 of the county's money is immaterial; the obligation to account for it being the same as if there had been no irregularity on the part of the county's fiscal agents.

It is intimated by defendant, but not argued with much earnestness, that when the county treasurer used the general funds of the county to care for the road district warrants it was an unlawful conversion of such funds for which she and her bondsmen were liable, and that the county was relegated to an action against her and her bondsmen. While her act was unlawful and to be condemned, the loss to the county did not occur by reason thereof but by reason of the insolvency of the depositary and its consequent inability to pay over to the treasurer of the county all public moneys that came into its hands.

Defendant complains in its reply brief that fundamental error was committed in allowing interest at six per cent per annum from December 15, 1923, the date plaintiff demanded payment of defendant surety company of balance due from bank, instead of two per cent on money in active and four per cent on money in inactive accounts. The basis of the claim that the interest should be the lower rates is that the statute (paragraphs 4650 and 4651, Civil Code) fixes those rates as the permissible rates to be charged and collected from the depositary. But it is obvious those rates should apply only so long as the depositary is a solvent and going concern and able to meet and discharge its obligations. When because of the insolvency of the depositary the active and inactive accounts no longer exist, but are converted into claims against the estate of the insolvent, we are satisfied the rate of interest ordinarily calculated on liquidated claims as damages should as against the surety be allowed. *Talley* v. *State,* 121 Ark. 4, 180 S. W. 330. We think the county was entitled as damages to the legal rate of interest from the date of the demand upon the surety company; there being no contract or statute as to what the rate should be after the bank became insolvent.

We have carefully examined all the questions raised by the defendant on this appeal, and in the foregoing opinion considered all those we believed merited consideration. Under the law and the evidence, the judgment entered against the defendant surety company is fully sustained, and the court committed no error in directing the jury to return a verdict in favor of the plaintiff.

The judgment is affirmed.

McALISTER, C. J., concurs.

LOCKWOOD, J.—I regret to say I cannot agree with the majority of the court in regard to the $10,846.88 covered by county road warrants. In my opinion, under the facts of this case they were not "public money," as defined by our statute, at the time they came into the possession of the bank, and the surety on the depositary bond is not liable for the alleged deposits representing them. The whole transaction carried on by the county treasurer in regard to these warrants, with the active assistance of the bank, was absolutely illegal, and, if any loss resulted to the county therefrom, I think it is the treasurer and her bondsmen who are responsible therefor, and not the surety on the depositary bonds.

There has grown up in Arizona among custodians of public funds an increasing tendency to handle such funds without regard to the rules laid down by the legislature. Much loss has resulted to the public therefrom, and I fear the effect of the majority opinion will tend rather to encourage than discourage such illegal practices. If public officers feel they can shift the responsibility for the result of their illegal acts on others' shoulders, human experience shows that they will be less careful to comply with the law than if the responsibility rests upon them.