NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IFTIGER FAMILY TRUST, an Arizona Trust; JAMES DUBOIS, III
and JEFFREY DUBOIS, co-trustees and personally, *Plaintiffs/Appellees*,

*v.*

ANNE D. SWEET, *Defendant/Appellee,*

W. DAVID WESTON, personally and as Assignee of Anne D. Sweet,
*Defendant/Appellant*.

No. 1 CA-CV 15-0385
FILED 10-20-2016

Appeal from the Superior Court in Mohave County
No. S8015CV201200412
The Honorable Charles W. Gurtler Jr., Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Sanders & Parks, P.C., Phoenix
By G. Gregory Eagleburger
*Counsel for Plaintiffs/Appellees Iftiger Family Trust, James Dubois III, Jeffrey
Dubois*

W. David Weston, Salt Lake City, Utah
*Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Randall M. Howe joined.

---

**K E S S L E R**, Judge:

¶1        Appellant W. David Weston ("Weston") appeals from the superior court's dismissal of his counterclaims and third party claims. Weston argues on appeal that the court did not provide him with notice that the default judgment hearing would consider issues of liability, that the court incorrectly found against him on issues of damages and liability, and that he should have been awarded punitive damages.   For the following reasons, we affirm the dismissal of the third party claims and the judgment for Weston for conversion.   We reverse the dismissal of the remaining counterclaims against the Iftiger Family Trust ("Trust") and remand for the court to determine the amount of damages, if any, proven at the default judgment hearing.

## FACTUAL AND PROCEDURAL HISTORY

¶2        The Trust owns the Foot Hill Mine ("Mine"), located in Mohave County.  Scharlotte Iftiger-Tieman ("Scharlotte") became trustee of the Trust in August 2006.  Jeffrey Dubois ("Jeffrey") and James Dubois, III ("James") are the current trustees of the Trust.

¶3        Anne Sweet ("Sweet") and Merton Hamilton ("Hamilton") formed the Gyro Stone partnership ("Gyro Stone").[1]  In 2006, Gyro Stone and the Trust entered into an agreement providing Gyro Stone with a sixty percent interest and the Trust with a forty percent interest in the Mine.  The agreement was signed by Scharlotte as representative of the Trust.  The agreement provided that Hamilton was the manager of the venture and therefore had the right to maintain security and to control who was permitted to be at the Mine.  Pursuant to the agreement, Gyro Stone would provide all of the startup equipment and pay operating costs until the Mine

---

[1]        Sweet and Hamilton also formed two corporations under the name Gyro Stone: Gyro Stone, Inc., a defunct Utah corporation, and Gyro Stone, Inc., a defunct Nevada corporation.  The Gyro Stone corporations were dismissed from the suit in January 2013 for failure to obtain counsel.

was producing at a rate of one ounce of gold per ton of raw material.  At that point, Gyro Stone and the Trust would share both expenses and profits according to their interests in the Mine.

¶4          Gyro Stone used mining equipment, including a Komatsu backhoe, a mill it had purchased, and a D8 bulldozer, to begin work at the Mine.  By early 2007, Gyro Stone had uncovered a gold vein.  In June 2007, Hamilton wrote Scharlotte that the Mine had produced 2.3 ounces of gold from two tons of raw material.  Hamilton asserted that, pursuant to the above-referenced provision of the partnership agreement, the startup period was now over and Gyro Stone and the Trust would share profits and expenses as outlined in their agreement.  Hamilton mailed copies of this letter to James and Jeffrey.

¶5          After Gyro Stone announced the end of the startup period, James authorized changing the lock on the access gate to prevent Gyro Stone from entering the Mine.  James and Jeffrey, among others, brandished and discharged firearms at the Mine, intimidating Gyro Stone employees.[2]

¶6          In April 2008, Scharlotte and Thomas Stevens ("Stevens") formed 4th of July, LLC and were the sole members.  Scharlotte, in her capacity as trustee, then purported to transfer the Mine from the Trust to 4th of July via quit claim deed.  Stevens then contacted Gyro Stone and demanded they vacate the mine within thirty days.

¶7          Based on the discharge of firearms and Stevens's demand, Gyro Stone ceased operations at the Mine.  The mining equipment was then vandalized or stolen while Gyro Stone was absent from the Mine.  In addition, James authorized the removal of ore stockpiles from the Mine in Gyro Stone's absence.

¶8          In March 2009, in a separate action, the superior court quieted title of the Mine in favor of the Trust and against 4th of July.[3]  In that action, the court found that Scharlotte had breached her fiduciary duties to the Trust by breaching the agreement with Gyro Stone, by appointing her son, a convicted felon, as co-trustee, and by transferring the Mine to 4th of July.

---

[2]      Although according to testimony the harassment was carried out by James DuBois, Jr., James's father, admissions entered against James attested to his involvement in the harassment.

[3]      *James L. Dubois, III et al. v. Scharlotte Iftiger-Tieman et al.*, CV 2008-1042 (Mohave Cty. Mar. 30, 2009).

The court also removed Scharlotte as trustee and made James and Jeffrey co-trustees of the Trust.

¶9             To help fund the suit against Scharlotte, Gyro Stone loaned James $2100 and Jeffrey $600.  Neither loan has been repaid.  Gyro Stone had previously made a series of loans totaling $5200 to Scharlotte.  In this action, the Trust admitted responsibility for the loans to Scharlotte.

¶10             The Trust filed suit in 2012 against various parties implicated by the mining agreement, including Gyro Stone, Sweet, and Hamilton. Sweet[4] filed counterclaims against the Trust and third party claims against James and Jeffrey.  In 2013, Sweet assigned all of her interests and rights in the suit to Weston, who was permitted to substitute as a party.  The Trust then amended its complaint to include Weston, and Weston filed his own counterclaims against the Trust and third party claims against James and Jeffrey, as well as others associated with the Trust, James, or Jeffrey. Weston filed claims for declaratory relief, breach of contract, unjust enrichment, breach of partnership agreement, breach of fiduciary duty, breach of partnership duty, interference with potential economic opportunity,[5] and conversion.

¶11             Weston served requests for admissions on the Trust and, when it failed to respond, the superior court deemed those requests admitted.  After the Trust's counsel withdrew and the Trust was given an opportunity to find new counsel but failed to do so, the court struck the Trust's amended complaint and answer.  A default was entered against the Trust only.  The court then scheduled a hearing on the default, after which it dismissed all of Weston's counterclaims and third party claims except for conversion.  The court awarded Weston $20,000 for conversion against the Trust.

¶12             Weston timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2016).

## DISCUSSION

---

[4]     Hamilton died in 2009.  Sweet was thus the only surviving partner of Gyro Stone at the time of the underlying lawsuit and was the executrix and sole beneficiary of Hamilton's estate.

[5]     We construe the complaint to allege a claim for interference with prospective business advantage.

I.     Default Proceedings and Third Party Claims

**¶13**          Weston asserts that the superior court erred by not providing notice that the default hearing would consider issues beyond the amount of damages to be awarded against the Trust, by ruling on liability, and by not granting a jury trial.  Weston further argues the third party claims against James and Jeffrey should not have been dismissed as a result of the default hearing.[6]  As interpretation of a rule involves legal rather than factual questions, we review the rule and its application to the facts de novo.  *Patterson v. Maricopa Cty. Sheriff's Office*, 177 Ariz. 153, 156 (App. 1993) (citations omitted).

**¶14**          To the extent Weston raises any errors in the procedure of the default hearing resulting in the dismissal of his claims against James and Jeffrey, he has waived these arguments.  Absent extraordinary circumstances, errors not raised in the superior court cannot be raised on appeal because the trial court should be afforded the opportunity to correct any asserted defects.  *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) (citations omitted).  Procedural defects are usually waived if not raised and preserved in the trial court.  *Health For Life Brands, Inc. v. Powley*, 203 Ariz. 536, 538, ¶ 11 (App. 2002) (citation omitted).

**¶15**          Before and during the default judgment hearing, the superior court gave no indication that it was expecting Weston to present evidence as to liability or as to any claims against other parties.  Thus, the only time Weston could have objected to the superior court's dismissal was after the court issued its judgment.  To preserve this argument for appeal, Weston should have made a motion for new trial or for relief from the judgment.  Ariz. R. Civ. P. 59(a) and 60(c).  By failing to properly raise these errors below, Weston has waived his arguments regarding the default hearing and the resulting dismissal of his third party claims against James and Jeffrey.  *Supra* ¶ 14.

**¶16**          However, to the extent Weston claims the superior court erred in its determination of liability and damages against the Trust, such argument is not waived.  First, Weston expressly reminded the court before

6          On appeal, Weston does not address the dismissal of claims against any parties other than the Trust, James, and Jeffrey.  Accordingly, we will not address any alleged error as to the dismissal of claims against other parties.  *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996) (citations omitted) ("Issues not clearly raised and argued in a party's appellate brief are waived.").

the default hearing that the Trust had admitted key facts relating to its liability. We consider that portion of the record sufficient to preserve any objection that the hearing was limited to damages as to the Trust. Moreover, a post-trial motion for a new trial on damages is not required to preserve the issue of sufficiency of evidence. *See Nat'l Sur. Co. v. Pinal County*, 30 Ariz. 383, 386 (1926) (finding predecessor statute to A.R.S. § 12-2102(c) (2016) does not require a motion for new trial to review sufficiency of the evidence when trial was to the court). Accordingly, we turn to each of the court's rulings on Weston's counterclaims against the Trust.

II.    Counterclaims

**¶17**    Weston alleged eight counterclaims against the Trust. The claim for breach of contract for failure to pay a $12,100 promissory note was settled in a separate action, and Weston does not raise the claim on appeal thus waiving the dismissal of that claim. *Belen Loan Inv'rs, LLC v. Bradley*, 231 Ariz. 448, 457, ¶ 22 (App. 2012) (citation omitted). Of the remaining seven claims, we affirm in part, reverse in part, and remand.

A.  Standard of Review

**¶18**    So long as they are supported by substantial evidence, we defer to a trial court's factual findings, but we review any issues of law de novo. *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 442, ¶ 12 (App. 2001) (citation omitted). Issues of contract interpretation are reviewed de novo. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010) (citation omitted). We view the facts in the light most favorable to sustaining the trial court's judgment. *All. Marana v. Groseclose*, 191 Ariz. 287, 288 (App. 1997) (citation omitted).

B.  Breach of Contract

**¶19**    Five of Weston's counterclaims—declaratory relief that the Trust had breached the agreement, breach of the partnership agreement, breach of fiduciary duty, breach of partnership duty, and interference with prospective business advantage—are merely duplicative arguments for a single breach of contract claim based on the Trust's breach of the agreement with Gyro Stone. We will therefore address them together.

**¶20**    Although Weston's brief is not a model of clarity, we understand his primary argument to be that the superior court erred in dismissing these claims for his failure to prove the Trust's liability both because the Trust had already defaulted and because the Trust had admitted essential elements of liability. We agree with Weston.

¶21 A default is a judicial admission of the plaintiff's right to recover, though not of the amount of damages if the claim is unliquidated. *Reed v. Frey*, 10 Ariz. App. 292, 294 (1969). A plaintiff is "entitled" to judgment when a default has been properly entered. *Mullen v. Gross*, 84 Ariz. 207, 211 (1958). Nonetheless, a defendant is not held to admit facts that are not well-pled or to admit conclusions of law. *S. Ariz. Sch. For Boys, Inc. v. Chery*, 119 Ariz. 277, 281-82 (App. 1978) (citations omitted).

¶22 Even if some of the necessary elements of the Trust's liability were arguably not well-pled in the counterclaim, the Trust had admitted several facts relating to its breach of contract that the superior court contradicted or ignored in the judgment. Arizona Rule of Civil Procedure 36(c) states "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Ariz. R. Civ. P. 36(c). An admission that is not withdrawn or amended pursuant to Rule 36 cannot be rebutted by contrary evidence or ignored by the superior court simply because the court finds the evidence presented by the party against whom the admission operates more credible.[7] *Castiglione v. U.S. Life Ins. Co. In City of N.Y.*, 262 F. Supp. 2d 1025, 1030 (D. Ariz. 2003) (citations omitted). Unless the court allows withdrawal of admissions, there is no discretion to reexamine admitted facts. *See Cont'l Bank v. Wa-Ho Truck Brokerage*, 122 Ariz. 414, 418 (App. 1979) (finding failure by a party to request to be relieved of its admissions binds the party to the admission on appeal).

¶23 To the extent the allegations of breach of contract were well-pled in the counterclaim, the Trust was precluded from contesting its liability for the breach of contract. Weston established his prima facie case through the Trust's default. Furthermore, any aspects of the counterclaim that arguably were not well-pled were conclusively established by the Trust's admissions. Because the Trust did not move to set aside the default, both the Trust and the superior court were bound by the facts established therein. As the counterclaim alleged, after the startup period, Gyro Stone would acquire a sixty percent working interest in the Mine, the Trust would

---

[7] Arizona Rule of Civil Procedure 36(c) is substantially similar to its federal counterpart, Federal Rule of Civil Procedure 36(b), and we therefore consider federal interpretations of that rule. *See Edwards v. Young*, 107 Ariz. 283, 284 (1971) (giving great weight to federal interpretations of rules of civil procedure); *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, 548 n.8, ¶ 18 (App. 2008) ("It is appropriate to look to federal courts' interpretations of federal rules that mirror Arizona rules.") (citations omitted).

have a forty percent interest, and each party would be liable for their proportionate share of costs and expenses thereafter. It also alleged that by June 4, 2007, 2.3 ounces of gold were recoverable from two tons of ore.[8]

**¶24** In its judgment, the superior court found Gyro Stone had breached the agreement and that Weston had not established breach by the Trust. This was error. The court could have properly found Gyro Stone had not proven the existence of damages, but based on the admissions and default by the Trust, it was incorrect to find against Gyro Stone on liability or causation.

**¶25** We therefore reverse the dismissal of Weston's breach of contract claim and remand to allow the superior court to rule on damages. Because the breach of contract claim is duplicative of Weston's other claims against the Trust for breach of fiduciary duty, breach of a partnership duty, declaratory judgment, and interference with prospective business advantage, on remand the superior court need only determine the amount of damages, if any, proven at the default judgment hearing.[9]

**¶26** Weston requests that we direct the superior court to enter judgment in his favor for $141,340.00, but we decline to do so. The superior court erroneously held Weston failed to prove the Trust had breached the agreement with Gyro Stone, and it never addressed whether Weston had proven the amount of alleged damages from the breach or what amount, if any, was caused by the breach. On remand, the superior court must determine the amount of such damages. Weston also seeks punitive damages and asks that the superior court be directed to address his entitlement to those damages. Although punitive damages are not usually awarded in breach of contract actions, the superior court may consider

---

[8] Moreover, through the requests for admissions, the Trust admitted the startup period ended June 4, 2007 when Gyro Stone produced 2.3 ounces of gold from two tons of material. The Trust also admitted it breached the agreement with Gyro Stone and that it was obligated to contribute forty percent of the costs after the end of the startup period. These facts are "conclusively established" against the Trust. Ariz. R. Civ. P. 36(c).

[9] Because we reverse the dismissal of these claims based on the default and admissions by the Trust, we do not address Weston's other arguments about why the superior court erred in dismissing these claims.

whether Weston is entitled to them on remand. *Miscione v. Bishop*, 130 Ariz. 371, 374-75 (App. 1981) (citation omitted).

¶27　　　　We remand for the superior court to rule on any damages arising from the above causes of action on which the Trust defaulted and that were sustained by Gyro Stone for the period after June 4, 2007, the end of the startup period, based on the evidence presented at the damages hearing. Pursuant to the agreement, Weston will be entitled to forty percent of the total costs, but not lost profits, incurred after that date.

¶28　　　　In addition, the Trust conceded it was liable to Gyro Stone for the $5200 in loans and that those amounts had never been repaid.[10] Those amounts should have been awarded to Weston on default. Rule 55(b)(1) provides that judgment by default may be entered, without a hearing, when the plaintiff's claim against the defendant "is for a sum certain or for a sum which can by computation be made certain." Ariz. R. Civ. P. 55(b)(1). Such was the situation here. We therefore reverse and on remand, the superior court shall award an additional $5200 in favor of Weston and against the Trust on those loans.

### C. Interference with Prospective Business Advantage

¶29　　　　To the extent Weston alleges that the breach of contract is also an interference with prospective business advantage, those damages are subsumed into the breach of contract analysis above. Weston also asserts that the Trust interfered with Gyro Stone's ability to acquire alternative financing for the Mine, thereby depriving it of future profits. However, Weston does not seek those damages on appeal and thus waives any separate claims for compensatory or punitive damages based on the Trust's interference with potential investors. Additionally, Weston did not seek to prove any lost profits from alternative financing. A claim for tortious interference with prospective business advantage is "insufficient unless the plaintiff alleges facts showing the expectancy constitutes more than a mere 'hope.'" *Dube v. Likins*, 216 Ariz. 406, 412, ¶ 14 (App. 2007) (citation omitted). We therefore affirm dismissal of that claim for lack of damages.

### D. Unjust Enrichment and Quantum Meruit

¶30　　　　Weston asserts he is entitled to his lost profits and damages and $5200 for the loans made to Scharlotte for the Trust under the theories

---

[10] The admission stated "the lftiger Trust is responsible for the following sums as loans from Gyro [Stone:] $3,000 on July 29, 2006, $2,000 on August 14, 2006, [and] $200.00 on January 3, 2007 . . . ."

of unjust enrichment and quantum meruit. The superior court correctly noted that unjust enrichment and quantum meruit sound in quasi-contract and are only available when the legal remedy is inadequate. *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 211, ¶ 14 (App. 2010) (citation omitted).

**¶31** To the extent Weston alleged that this claim included his lost damages from the Trust's breaches discussed in Section II.B, the superior court properly dismissed this claim because Weston has an adequate legal remedy.

### E. Conversion

**¶32** The superior court awarded Weston $20,000 for the mill taken from the Mine. Even though the testimony discussed other pieces of equipment at the Mine, including a Komatsu backhoe and a D8 bulldozer, Weston did not address the damages for the equipment. He thus waived any objection to that portion of his conversion claim. *See Schabel*, 186 Ariz. at 167 (citations omitted). Instead, Weston argues the court incorrectly interpreted his evidence concerning the ore stockpiles also taken from the Mine in two regards by: (1) confusing it with the amount required to establish profitability, and (2) finding the stockpiles did not equal sixty tons.

**¶33** As to Weston's first point, we agree that the superior court incorrectly made findings on the profitability of the Mine. *Supra* Section II.B. However, the size of the ore stockpiles was a finding of fact relating to the amount of damages on the value of the stockpiles properly in front of the superior court. We give great deference to the factual findings of the trial court and will affirm if the facts are supported by substantial evidence. *Sw. Soil Remediation*, 201 Ariz. at 442, ¶ 12. The court expressly found the testimony regarding the ore stockpiles to not "be very credible." Apart from this testimony and a few pictures, Weston offered no additional evidence as to either the size of the stockpiles or the amount of gold contained within. Substantial evidence supports the court's finding that Weston did not establish the amount of damages from the loss of the ore stockpiles. We affirm the judgment for Weston on the conversion claim.

### CONCLUSION

**¶34** For the foregoing reasons, we reverse the superior court's dismissal of claims against the Trust for declaratory relief, breach of the partnership agreement, breach of fiduciary duty, breach of partnership duty, and interference with prospective business advantage—all of which are based on and coalesced within the Trust's breach of the contract with Gyro Stone. On remand, the court shall determine if Weston proved an

amount of damages for that breach of contract after June 4, 2007, and if so, shall enter a judgment for those damages, not to exceed $47,497.02.[11] The court may also consider if Weston is entitled to any punitive damages for that breach. The court shall also enter judgment against the Trust for $5200 for the loans made by Weston to Scharlotte on behalf of the Trust. We affirm all other aspects of the superior court's judgment, including the $20,000 award for conversion. We deny the Trust's request for attorneys' fees and award Weston all taxable costs on appeal upon timely compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[11] Weston asks for $141,340.00 in damages. However, that amount includes the $20,000 award for the mill, $17,550 for the ore stockpiles, and $5200 for the loans to Scharlotte. The remaining $98,590 includes costs incurred during the startup period, which ended June 4, 2007. According to the summary of damages provided by Weston, Gyro Stone incurred $47,497.02 in costs after startup ended. It is unclear whether this amount represents the Trust's forty percent share of costs or the total costs. Regardless, Weston is entitled to no more than $47,497.02 for breach of contract on remand, as he may not recover more than the benefit of his bargain. As stated in the agreement, Gyro Stone bore the risk of losing its startup costs. The Trust's breach does not alter that risk.